11 GAUDIN, Judge.
Appellant is Earline Jones, alleging that the District 9 Workers’ Compensation Judge *62 erred in finding that her claim for weekly benefits had prescribed. We affirm.
Jones injured her left knee on May 5,1988 when she tripped over a cart and fell. She filed a claim on July 25, 1989; weekly benefits were paid until August 23,1993.
On April 8,1992, Jones’ treating physician, Dr. Melvin Parnell, stated:
“The patient is known to have definite degenerative changes in all three compartments of her knee with Grade III to IV changes medially and II to III changes in the patellofemoral and lateral compartment. She is markedly overweight and has not been able to rebuild her quadriceps mechanism over this long period of time and, finally, the examination by Dr. Steiner in his second opinion report 17 January 1992 shows no significant mechanical problems or evidence of synovitis but rather some pes bursa symptoms for which he injected her with Celestone.
“I think there is no doubt the lady has pain in her knee with weak muscles and overweight and worn knee there is no other way that she could be expected to feel. However, this does not mean she would benefit from another arthroscopy. All the arthroscopy can do is smooth out mechanical problems and she does not have the mechanical evidence of these findings or the objective findings of these problems being present to a degree that would indicate the need for arthroscopy.
l2“What the patient would benefit would be from protection of her knee by some weight loss and by a good effort at getting her muscles stronger to support her knee.
‘Without this, all forms of treatment will be unsuccessful and the patient will continue to have symptoms and gradually wear out her knee further and require a total joint replacement in the future.
“In the meanwhile, I would try to get the patient in an exercise program to document whether she is trying to do her part in this process by trying to get her muscles stronger and by trying to protect her knee as much as possible.
“If the patient shows good effort and is willing to help rehabilitate herself actively, I think, in the future, if she develops enough mechanical symptoms for repeated arthroscopy, one more arthroscopy will probably be indicated before having her total joint replacement done. If she does not work on her quadriceps and strengthen her muscles, there is very little that we will be able to do that will benefit her and even her total joint replacement will be less successful than it would be otherwise.”
There is no evidence in the record suggesting that Jones received any medical treatment or medical benefits from April 8, 1992 (or from the time weekly benefits were discontinued in August, 1993) until January 10, 1995, when she again saw Dr. Parnell, who wrote:
“I told the patient that with the amount of degenerative change noted previously at the time of her arthroscopic procedure, I feel that she is a candidate for a total knee replacement. Although I would agree that the x-rays alone do not look all that bad, they do not show the full extent of the chondromalacia and it is the absence of this cartilage which is the basis for my recommendation of total knee arthroplasty. The patient is scheduled for a second opinion tomorrow with Dr. Terry Habig and I recommended that she keep that appointment. In the meantime, I have given her a prescription for Daypro and I will see her back in a month for repeat evaluation.”
On January 5, 1996, Jones filed a claim seeking weekly compensation ^benefits and medical expenses. This was filed and treated as a new claim because there was no record of the earlier claim. Jones’ former employer agreed to pay additional medical expenses, including the cost of a knee replacement, but refused to pay weekly benefits. The exception of prescription was argued on August 28, 1996 and granted on September 5,1996.
Inasmuch as medical expenses are being or will be paid, the only issue before the trial court was whether Jones’ claim for weekly benefits had prescribed. In Ridlen v. St. Charles Manor Nursing Center, Inc., 644 So.2d 244 (La.App. 5 Cir.1994), this Court said at page 247:
*63 The employer has a duty to furnish medical expenses to the injured employee. LSA-R.S. 23:1203. The right to medical expenses is separate and distinct from the right to compensation. Therefore, an employee may recover medical expenses even though there is no recovery for compensation. Young v. Hercules, 451 So.2d 109 (La.App. 3rd Cir.1984). Butts v. Insurance Co. Of North America, 352 So.2d 745 (La.App. 3rd Cir.1977), writ denied 354 So.2d 206 (La.1978).
In ruling that the exception of prescription was appropriate, the trial judge, in his assigned “Reasons for Judgment,” relied on LSA-R.S. 23:1209, which provides in pertinent part:
(A) In ease of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, Uwhen the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
(D) When a petition for compensation has been initiated as provided in Section 1310.3, unless the claimant shall in good faith request a hearing and final determination thereon within five years from the date the petition is initiated, same shall be barred as the basis of any claim for compensation under the Worker’s Compensation Act and shall be dismissed by the office for want of prosecution, which action shall operate as a final adjudication of the right to claim compensation thereunder.
In his “Reasons,” the trial judge stated:
“Under LSA-R.S. 23:1209 there are two applicable exceptions to the general rule that a worker’s compensation claim is barred unless asserted within one year from the date of the accident. The first allows a claimant who has received payments to file a claim within one year of the last payment. Smith v. State Through Department of Health & Hospitals, 652 So.2d 635 (La.App. 1st Cir.1995). Here, plaintiff received her last payment on August 23, 1993. Her claim became prescribed on August 24,1994, well before her filing date of January 5,1996.
“Finally, when plaintiffs injury is a ‘developing injury1 the one year limitation does not take effect until one year from the time the injury develops. Holmes v. Baton Rouge Water Works Company, 558 So.2d 629 (La.App. 1st Cir.1990). Plaintiffs injury is not developing as described by the language of LSA-R.S.23:1209, and therefore, does not fit under this exception. | sEven if the plaintiff proved her injury to have been developing, the claim is barred unless instituted within two years of the accident. Id. Plaintiffs claim was filed some six and one-half years after the accident.
“Additionally, the original claim filed on July 25,1989, was abandoned as of July 25, 1994. LSA-R.S. 23:1209(D) provides that:
“When a petition for compensation has been initiated as provided in Section 1301.3, unless the claimant shall in good faith request a hearing and final determination thereon within five years from the date the petition is initiated, same shall be barred as the basis of any claim for compensation under the Workers’ Compensation Act and shall be dismissed by the Office for want of prosecution, which action shall operate as a final adjudication of the right to claim compensation thereunder.”
“Therefore, the claim filed on January 5, 1996, is a new dispute and does not relate *64 back to the previously abandoned 1989 claim”
Our review of this record indicates that Section A of R.S. 23:1209 is applicable because (1) there was more than a one-year period of inactivity between Jones and her employer, from August 23,1993 to January 5, 1996; (2) this is not a ease involving any section of R.S. 23:1221, and (3) Jones’ knee injury was quickly apparent and was not late in developing.
Section D of R.S. 1209 did not become law until after Jones’ accident. Whether this section can be applied retroactively is of no moment here because of the relevance of Section A.
AFFIRMED.
CANNELLA, J., dissents.